UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHWESTERN DIVISION

SHAWN CHRISTOPHER PATRICK,    )
                              )
        Plaintiff             )
                              )
    vs.                       )   Case No.  3:16-cv-00852-HGD
                              )
RAI SERVICE COMPANY,          )
                              )
        Defendant             )

## MEMORANDUM OPINION

Defendant has filed a Motion to Dismiss and Compel Arbitration. (Doc. 6). Plaintiff filed a response, defendant filed a reply, and plaintiff filed a sur-reply. (Docs. 10, 11 & 14). A hearing on the motion was held on September 7, 2016. Present were plaintiff Shawn Christopher Patrick, proceeding *pro se*, and Tamula Yelling for defendant. Defendant presented testimony from Scott Lefelar, in-house counsel for defendant's Human Resources Department.

Plaintiff commenced this action by filing a complaint alleging defendant violated the Americans With Disabilities Act and the Age Discrimination in Employment Act in connection with his employment and termination. The complaint in this action and the testimony at the hearing reflect that plaintiff was working for defendant in 2012, when defendant implemented an arbitration agreement for its

employees.[1]  Continued eligibility for bonus payments which had been paid to employees such as plaintiff prior to 2012 was conditioned upon acceptance of the arbitration agreement.  Plaintiff refused to sign the agreement in 2012; therefore, he was deemed ineligible for any bonus payments from 2012, which would have been paid in 2013.  In fact, plaintiff did not receive any bonus in 2013 for 2012.

Mr. Lefelar testified that on February 22, 2013, he reached out by email to any employees who had failed to sign the arbitration agreement, including plaintiff. (Doc. 11-3, Emails).  Plaintiff did not respond to the February 2013 email.  Lefelar sent another email to plaintiff on August 5, 2013, again giving plaintiff an opportunity to sign the arbitration agreement and reminding plaintiff he would be eligible for 2013

---

[1] The arbitration agreement provides in relevant part:

2. Covered Claims.
   a. Except as expressly provided in Sections 2(b) and 2(c), this Agreement covers all disputes, claims and/or controversies between or among the Parties, including but not limited to all claims arising from or relating to: (i) the Employee's employment relationship with the Employer; or (ii) the termination of the Employee's employment relationship (collectively, the "Covered Claims"). Covered Claims include, but are not limited to statutory claims, contractual claims, tort claims and common law claims.  Statutory claims include, but are not limited to, Title VII of the Civil Rights Act of 1964, the Fair Labor Standards Act, the Age Discrimination in Employment Act, the Americans with Disabilities Act, the Family and Medical Leave Act, as well as state and local laws prohibiting discrimination, harassment and retaliation in the workplace.

(Doc. 6, Rigsby Decl. ¶¶ 3, 7 & Ex. A).

bonus payments in 2014 only if he did so. Plaintiff responded on August 12, 2013, asking when the deadline for signing would be. After Lefelar advised plaintiff that the deadline was October 1, 2013, plaintiff emailed Lefelar that he would make his decision after he took "the CBT" which was due around the same time. Lefelar testified that he emailed plaintiff a PDF version of the arbitration agreement with a blank signature line. Plaintiff testified that he went to Winston-Salem, North Carolina, for business during the week encompassing September 30, 2013, and believed that he might be fired over his failure to sign the arbitration agreement. He also testified he was in meetings 12 to 14 hours a day during this time and does not recall asking Lefelar to send him a copy of the arbitration agreement.

On September 30, 2013, at 9:16 p.m., an email was sent by plaintiff from his work email account to Lefelar. The email read:

> Scott, I did not get your e-mail until I got back to the room tonight. I signed the document the only way I could. I will call you tomorrow to see if this will work if not, I will sign the hard copy like you suggested.

(*sic*) (DX 1; Doc. 6, Ex. A). Attached to the email was a document entitled "Arbitration Agreement (Live Sig) (3).pdf." (*Id.*). Lefelar testified that the attachment to the email was a copy of the arbitration agreement, showing a typed signature in a box, "Shawn Patrick," on the "Employee Signature" line and a typed signature in a box, "Shawn Patrick," on the "Print Name" line. The document further

contains a statement at the end, reading "YES-By answering 'Yes,' I acknowledge that I have read *the Arbitration Agreement for Employees of RAI and Its Affiliated Companies* and agree to be bound by its terms." Beside that statement is a line on which appears a box containing the typed word "Yes."[2] Plaintiff testified that after he sent the email, Lefelar told him on the telephone, "I'll take care of it," a comment plaintiff denies understanding. Lefelar does not recall telling plaintiff this. Plaintiff did not call Lefelar on October 1, 2013, or after about signing a hard copy of the arbitration agreement, nor was he ever contacted about affixing his signature to a hard copy of the arbitration agreement.[3]

Plaintiff testified that he had a Topaz "signature gem," which he described as an electronic pen provided by defendant that could be used to sign a signature on a computer screen, and the signature appears like a handwritten signature. He also testified that his pen was not working on September 30, 2013. Plaintiff further testified that he engaged in a strategy to delay and avoid signing the arbitration agreement, on advice of counsel. Plaintiff denied that he "wilfully and voluntarily"

---

[2] Immediately below that statement is another statement preceded by a line, which reads "NO-I understand that if I answer 'No' I will NOT be eligible for AIAP bonus payments." There is nothing on the line next to that statement.

[3] A copy of plaintiff's personnel file was provided to the court for *in camera* review. All documents after 2005 that bear a signature have a typed signature rather than a handwritten one, for plaintiff and for other employees of defendant who signed the documents.

signed the arbitration agreement and stated that at no time did he ever type his name on any arbitration agreement. Lefelar also denied signing the arbitration agreement on plaintiff's behalf and testified he is unaware of anyone else signing the agreement for plaintiff.

The evidence reflects that plaintiff received bonuses of $14,704 in 2014 and $13,874 in 2015. (Doc. 11-2). He would not have received the bonuses had defendant not considered him to have signed the arbitration agreement. Plaintiff became aware of the bonus payments when they were deposited in his bank account. However, he never asked defendant about why he was receiving the bonuses, and he did not reject or refund the bonus payments. Lefelar testified that the first time he became aware that plaintiff denied signing the arbitration agreement was when he saw plaintiff's response to the Motion to Compel Arbitration filed in this litigation. Plaintiff stated he told defendant he did not sign the arbitration agreement during a company investigation of him in 2015. Plaintiff was terminated by defendant on June 10, 2015.

## DISCUSSION

**Validity of Arbitration Agreement**

The Federal Arbitration Act (FAA), 9 U.S.C. § 1, *et seq.*, provides that a written arbitration agreement in certain contracts "shall be valid, irrevocable, and

enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.  Because of the FAA, federal courts are required to place arbitration clauses on equal footing with other contracts.  *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 67 (2010); *Janiga v. Questar Capital Corp.*, 615 F.3d 735, 740 (7th Cir. 2010) ("[F]ederal law places arbitration clauses on equal footing with other contracts, not above them."). Nonetheless, federal courts interpret arbitration clauses broadly where possible. *AT&T Techs., Inc. v. Communications Workers of Am.*, 475 U.S. 643, 649-50 (1986).  The result of such broad interpretation is that "any doubts concerning the scope of arbitral issues should be resolved in favor of arbitration." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 945 (1995) (internal citation and quotation marks omitted); *AT&T Techs., Inc.*, 475 U.S. at 650 ("Doubts should be resolved in favor of coverage.") (quotation omitted).  "[A]s with any other contract, the parties' intentions control, but those intentions are generously construed as to issues of arbitrability." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985) (alteration supplied).

However, "the presumption of arbitrability only [applies] where a validly formed and enforceable arbitration agreement is ambiguous about whether it covers the dispute at hand." *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 301 (2010).  *See also Applied Energetics, Inc. v. NewOak Capital Mkts., LLC*, 645 F.3d

522, 526 (2d Cir. 2011) (holding that "while doubts concerning the scope of an arbitration clause should be resolved in favor of arbitration, the presumption does not apply to disputes concerning whether an agreement to arbitrate has been made").

"The party seeking to compel arbitration has the initial burden of proving the existence of a contract calling for arbitration and proving that the contract evidences a transaction substantially affecting interstate commerce. '[A]fter a motion to compel arbitration has been made and supported, the burden is on the nonmovant to present evidence that the supposed arbitration agreement is not valid or does not apply to the dispute in question.'" *American Gen. Fin., Inc. v. Morton*, 812 So.2d 282, 284 (Ala. 2001), quoting *Jim Burke Auto., Inc. v. Beavers*, 674 So.2d 1260, 1265 n.1 (Ala. 1995)). *See also Kenworth of Birmingham, Inc. v. Langley*, 828 So.2d 288, 290 (Ala. 2002); *Fleetwood Enters., Inc. v. Bruno*, 784 So.2d 277, 280 (Ala. 2000).

The existence of a valid contract to arbitrate is determined by state law. *See First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). There are two prerequisites for a valid arbitration contract under Alabama law: "(1) there must be a written agreement calling for arbitration[;] and (2) the contract in which the arbitration agreement appears must relate to a transaction involving interstate commerce." *Prudential Sec. v. Micro-Fab, Inc.*, 689 So. 2d 829, 832 (Ala. 1997) (citing *Maxus, Inc. v. Sciacca*, 598 So. 2d 1376 (Ala. 1992)) (alteration supplied).

Defendant contends plaintiff electronically signed the arbitration agreement dated September 30, 2013. An electronic signature has the same effect as a handwritten signature; however, the signature still must be attributed to that person before it can be established as the act of that person. *Ala. Code* § 8-1A-9 (2015). Whether an electronic signature is attributable as an act of that person "may be shown in any manner, including a showing of the efficacy of any security procedure. . . [and] from the context and surrounding circumstances at the time of its creation, execution, or adoption, including the parties' agreement, if any, and otherwise as provided by law." *Id.*

In *Granite Rock Co.*, the Supreme Court held that issues concerning contract formation are generally reserved for the courts to decide. 561 U.S. at 296. Indeed, it found that such a determination is the threshold question in any dispute involving arbitration. *Id.* at 295. Therefore, the district court must first "resolve any issue that calls into question the formation or applicability of the specific arbitration clause that a party seeks to have the court enforce." *Id.* at 297. In other words, arbitration of a dispute should only be ordered where "the court is satisfied that neither the formation of the parties' arbitration agreement nor . . . its enforceability or applicability to the dispute is in issue. Where a party contests either or both matters, the court must

resolve the disagreement." *Id.* at 299-300 (quotation marks omitted) (alteration in original).

In this case, plaintiff has denied signing the agreement, either physically or electronically, "in any manner recognized by proper electronic signature laws and agreements such as the Uniform Electronic Transactions Act (UETA) and the ESIGN Act . . . which requires both parties to agree to conduct an engagement electronically." (Doc. 14 at 2). Scott Lefelar also denied signing the agreement on plaintiff's behalf. This leaves the question of how plaintiff's typed signature appeared on the agreement. Plaintiff's testimony was that his signature gem was not working. Taken in conjunction with his email to Lefelar, stating he signed the agreement the only way he could, it is reasonable to infer that plaintiff indeed signed the agreement by typing his name into the signature lines and typed "Yes" next to the line for acknowledgment of signing. While the court finds that it is more likely that plaintiff signed the agreement, because he then started receiving and retaining bonuses, it is not necessary to make a credibility determination because the issue can be decided on another ground.

**Constructive Contract**

Assuming, without deciding, that plaintiff did not sign the arbitration agreement, there still may exist a constructive or implied contract to arbitrate based on plaintiff's actions.

Under the doctrine of quasi-contract, the law implies a contract, based upon the principles of equity, to prevent the unjust enrichment of one who knowingly accepts and retains a benefit provided at the detriment of another, who has a reasonable expectation of compensation or other benefit. *Utah Foam Prods., Inc. v. Polytec, Inc.*, 584 So.2d 1345 (Ala. 1991); *Opelika Prod. Credit Ass'n v. Lamb*, 361 So.2d 95 (Ala. 1978); *Hendrix, Mohr & Yardley, Inc. v. City of Daphne*, 359 So.2d 792 (Ala. 1978). "The remedy of quasi-contract is based upon the established principle of avoiding unjust enrichment. For this remedy to apply, there must be a detriment and a resulting benefit, and the two must be related." *G.S. Gothard & Son Contractors, Inc. v. Mansel*, 611 So. 2d 1101, 1103 (Ala.Civ.App. 1992) (citations omitted).

The benefit conferred need not be strictly monetary. "A person may be considered to have conferred a benefit upon another if he has given him possession of, or an interest in, land, chattels, or choses in action, or if he performs some service which is beneficial to or at the request of the other person, or if he satisfies a duty [or] a debt of the other. Whenever one person adds to the other's advantage in any form,

whether by increasing his holdings or saving him from expense or loss, he has conferred a benefit upon the other." *Opelika Prod. Credit Ass'n*, 361 So.2d at 99. "There are two kinds of implied contracts—those implied in fact and those implied in law. Contracts implied in law are more properly described as quasi or constructive contracts where the law fictitiously supplies the promise [to pay for the labor or services of another] to prevent a manifest injustice or unjust enrichment." *Green v. Hospital Bldg. Auth. of the City of Bessemer*, 294 Ala. 467, 470, 318 So.2d 701, 704 (1975). "The rule is that if one knowingly accepts services rendered by another, and the benefit and result thereof, the law implies a promise on the part of the one who so accepts with knowledge, to pay the reasonable value of such services rendered." *Richards v. Williams*, 231 Ala. 450, 453, 165 So. 820, 823 (1936).

   In this case, plaintiff accepted a benefit from defendant in the form of bonus payments to which he otherwise would not have been entitled, in exchange for an implied agreement to arbitrate most issues related to his employment with defendant. He knew that he was ineligible to receive bonus payments in the absence of agreement to the arbitration provisions, yet he never questioned defendant about the reason he was receiving the payments, never notified defendant he had not signed the agreement, and did not refund or reject the payments. Under these circumstances, the court finds that there is an implied or constructive contract between plaintiff and

defendant to submit employment-related matters to arbitration, which arguably benefits defendant, in exchange for which plaintiff received the benefit of bonus payments.

Further, it is clear that plaintiff had received a copy of the arbitration agreement and was aware of its contents. The arbitration agreement covers plaintiff's claims in this action related to his employment. Therefore, there is a binding contract between plaintiff and defendant to submit his claims in this action to arbitration.

## CONCLUSION

Based on the foregoing, it is ORDERED, ADJUDGED and DECREED that defendant's Motion to Compel Arbitration is due to be and hereby is GRANTED.

In addition to requesting that this court compel arbitration, defendant requests that the court dismiss the action. That aspect of defendant's motion is due to be and denied. Although there is legal authority from other circuits supporting the proposition that courts have discretionary authority under 9 U.S.C. § 3 to dismiss cases when compelling arbitration, the Eleventh Circuit adheres to a more literal interpretation of the statute. *See Bender v. A.G. Edwards & Sons, Inc.*, 971 F.2d 698, 699 (11th Cir. 1992). *See also Musnick v. King Motor Co. of Ft. Lauderdale*, 325 F.3d 1255, 1261 (11th Cir. 2003); *Pitchford v. Amsouth Bank*, 285 F. Supp.2d 1286,

1297 (M.D.Ala. 2003); *Wright v. Circuit City Stores, Inc.*, 82 F. Supp.2d 1279, 1288 (N.D.Ala. 2000); *Bradford v. KFC Nat'l Mgmt. Co.*, 5 F.Supp.2d 1311, 1315 (M.D.Ala. 1998); *Nazon v. Shearson Lehman Bros., Inc.*, 832 F.Supp. 1540, 1543 (S.D.Fla. 1993). *Accord Lloyd v. Hovensa, L.L.C.*, 369 F.3d 263, 268-271 (3d Cir. 2003).

In *Bender*, for example, the Eleventh Circuit concluded that district courts do not have the power to choose dismissal over a stay:

> The district court properly found that the state law claims were subject to arbitration, but erred in dismissing the claims rather than staying them. Upon finding that a claim is subject to an arbitration agreement, the court should order that the action be stayed pending arbitration. 9 U.S.C. § 3. If the parties do not proceed to arbitration, the court may compel arbitration. 9 U.S.C. § 4. Therefore, we vacate the dismissal of the state law claims and remand with instructions that judgment be entered staying all claims pending arbitration.

*Bender*, 971 F.2d at 699. In *Lloyd*, the Third Circuit expressed a similar stance on the issue, primarily basing its reasoning upon the clear statutory language, but also providing some practical justifications for entering a stay rather than an order of dismissal. *Lloyd*, 369 F.3d at 268-271. The court noted that a stay "relieves the party entitled to arbitrate of the burden of continuing to litigate the issue while the arbitration process is on-going, and it entitles that party to proceed immediately to

arbitration without the delay that would be occasioned by an appeal of the District Court's order to arbitrate."[4] *Id*. at 269.

For those reasons, it is ORDERED that the Motion to Dismiss is DENIED, and this action is STAYED pending resolution through arbitration.

Even so, the Clerk is DIRECTED to close this file for administrative and statistical purposes. *See, e.g., Taylor v. Citibank U.S.A., N.A.*, 292 F.Supp.2d 1333, 1346 (M.D.Ala. 2003) (closing file administratively after entering stay but advising parties of their right to request reinstatement); *Pitchford*, 285 F.Supp.2d at 1297 (same); *Nazon*, 832 F.Supp. at 1543 (same); *Brown v. Terminix Int'l Co., L.P.*, 2006 WL 181678, at *5 (S.D.Ala. Jan. 24, 2006) (same). That action shall have no effect on the court's retention of jurisdiction, and the file may be re-opened, on either party's motion, for an appropriate purpose, such as dismissal following settlement, entry of judgment, vacatur, or modification of an arbitrator's award. *See* 9 U.S.C. § 9; *Cortez Byrd Chips, Inc. v. Bill Harbert Constr. Co.*, 529 U.S. 193, 201-02 (2000).

The parties are DIRECTED to file a notice with the court upon settlement of the case or the conclusion of arbitration, whichever event shall first occur.

---

[4] The Eleventh Circuit also recognizes the fact that stays, unlike dismissals, are unappealable, interlocutory decisions. The court in *Bender* observed, "[i]f the district court had stayed the state law claims and compelled arbitration under 9 U.S.C. §§ 3-4, this order would not have been appealable under 9 U.S.C. §§ 16(b)(1) and (2)." *Bender*, 971 F.2d at 699 (alteration supplied). *See also Campbell v. Dominick & Dominick, Inc.*, 872 F.2d 358, 360 (11th Cir. 1989).

DONE and ORDERED this 9th day of September, 2016.

                                                HARWELL G. DAVIS, III
                                       UNITED STATES MAGISTRATE JUDGE